IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PRECISION IBC, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-0238-CG-M |
| | ) |
| HOOVER MATERIALS HANDLING | ) |
| GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the court on defendant's motion to transfer venue pursuant to 28 U.S.C. 1404(a) (Doc. 26), plaintiff's opposition to the motion (Doc. 32), and defendant's reply (Doc. 35). The court finds that defendant has failed to demonstrate that the balance of justice and convenience favors transfer and the motion is due to be denied.

Defendant asserts that this case should be transferred to the Southern District of Texas, Houston Division, for the convenience of the parties. Whether to transfer a case to another district is a matter within the discretion of the court. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). The federal change of venue statute provides that the court may transfer a case to another district in which it might have been brought in the interest of justice or for the convenience of the parties or witnesses. 28 U.S.C. § 1404(a). A motion to transfer under § 1404(a) thus calls on the district court to make an individualized, case-by-case determination based on principles of fairness and convenience. Stewart Org., Inc., 487 U.S. at 29, 108 S.Ct. at 2244. Resolution of a § 1404 motion involves a two-step analysis. First the court must "determine whether the action could originally have been brought in the proposed transferee district court" Folkes v. Haley, 64 F.Supp.2d 1152, 1155 (M.D.Ala. 1999), and then the court must

determine whether "in the interest of justice or for the convenience of the parties or witnesses" the action should be transferred.  In the instant case, there is no dispute that the action could originally have been brought in the proposed transferee district court.  (See plaintiff's opposition, Doc. 32, p. 2).  Thus, the court turns to the second step in the analysis: whether the balance of justice and convenience favors transfer. See Holmes v. Freightliner, LLC, 237 F.Supp.2d 690, 692 (M.D. Ala. 2002).

"[T]he burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice." C.M.B. Foods, Inc. v. Corral of Middle, 396 F. Supp. 2d 1283, 1285-86 (M.D. Ala. 2005) (citing In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)).  "Courts generally consider the following factors: the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses;  the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and [] trial efficiency." Holmes, 237 F.Supp.2d at 692 (citations omitted).

The plaintiff's initial choice of forum is the Southern District of Alabama. "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996).  This is particularly true "if the forum is in the district in which [the plaintiff] resides."  LaSalle Bank N.A. v. Mobile Hotel Props., LLC, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003).   The plaintiff in this case maintains its primary place of business in Fairhope, Alabama, which is in this district. (Dec. Beard, ¶ 1).   Thus, this factor weighs strongly against transfer.

"[A]side from the plaintiff's own choice of forum, [t]he most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses. <u>Bartronics, Inc. v. Power-One, Inc.</u>, 510 F.Supp.2d 634, 637-638 (S.D. Ala. 2007) (citations and internal quotations omitted). Defendant contends that litigating the case in this district would be inconvenient for defendant and for some of the witnesses. However, "litigation is always inconvenient to some party or witness." <u>Garay v. BRK Electronics</u>, 755 F.Supp. 1010, 1012 (M.D. Fla. 1991).

The plaintiff and defendant in this case are in the business of selling and leasing intermediate bulk containers designed to store and transport hazardous and sensitive materials. (Complaint, ¶¶ 5, 7). The complaint asserts claims for 1) violation of the Lanham Act, 2) violation of Federal Trademark Dilution Act, 3) intentional interference with contractual and/or business relations, 4) libel, and 5) trademark dilution under Alabama law. The claims arise from defendant's alleged distribution of an advertising memorandum that falsely represents the quality of plaintiff's tanks. In particular, the memo states that plaintiff's tanks are imported from China and "are built on the extreme lower limit of the UN specification for wall thickness..." (Doc. 1-3). The memo then states that "UN requires thickness testing every 60 months, if there is ANY deterioration of the Chinese tank wall thickness these units will not pass and will not be able to perform as a UN certified container." (<u>Id.</u>). The memo also contains a chart comparing the thickness of plaintiff's and defendant's tanks. (<u>Id.</u>). Plaintiff states in its complaint that it believes the memo was distributed and continues to be distributed on a local and nationwide basis. (Complaint, ¶ 9).

Defendant asserts that several of its officers and personnel in Houston are likely to have relevant information about plaintiff's claim such as 1) defendant's Southwest Regional Sales

Manager, Kevin Kinzie, who reportedly created the offensive memo, 2) defendant's Vice President of Sales and Marketing, Conrad Arnold, 3) defendant's Director of International Sales, Arash Hassanian.  According to defendant, Mr. Kinzie provided the memo only to a single individual named James Barry during a lunch meeting in Houston. (Kinzie Decl. ¶ 3).  Mr. Barry is employed by Alpine Mud, which is also based in Houston.  Defendant contends that Barry and Alpine Mud are likely to have information about: his discussions with Kinzie about the memo, whether they were confused or misled by the memo, whether defendant obtained any business from Alpine Mud as a result of the memo, and to whom they provided the memo.  Defendant argues that even plaintiff's Senior Vice President, Tim Bodron, lives and works in Houston.  Another potential witnesses, plaintiff's Director of Sales and Marketing, Ronald Reitz, does not live in Alabama, but instead lives in Louisiana.

In its response, plaintiff affirms that it is more convenient for plaintiff to litigate here, regardless of the fact that Bodron lives in Houston, Texas, and Reitz lives in Louisiana.  Plaintiff does not anticipate that Bodron will even be a witness, and if his testimony becomes necessary, plaintiff argues that his participation here will not be a problem because he regularly travels to plaintiff's headquarters in Fairhope, Alabama.  Reitz also regularly travels to Fairhope.  Many of plaintiff's witnesses reside in this District, including plaintiff's President and Chief Executive Officer, Anthony Beard, as well as several of plaintiff's corporate officers, management personnel, and members of plaintiff's sales team.  According to plaintiff, Beard will be a key participant in this litigation.  Additionally, plaintiff asserts that records pertaining to the design specifications of plaintiff's tanks and whether they satisfy UN standards are located in this District.

Defendant argues that the key evidence in this case centers on defendant's creation and use of the memo in Texas.  However, plaintiff does not concede that the single distribution to James Barry of Alpine Mud was the only use made by defendant of the memo.  Additionally, plaintiff asserts that it learned of the memo and first received a copy of the memo in Broussard, Louisiana, where Alpine Mud maintains an office. (Beard Decl. ¶ 10).  Thus, plaintiff believes there may be important witnesses in Louisiana, such as from Alpine Mud's Louisiana location.  Plaintiff further asserts that it will have other third party witnesses from elsewhere in the United States, such as from Snyder Industries, Inc. in Nebraska from whom plaintiff purchases its stainless steel tanks.  Snyder representatives regularly travel to plaintiff's Fairhope office. (Beard Decl. ¶ 9).  According to plaintiff, the information Snyder has about the quality of plaintiff's tanks and whether they meet UN specifications is the crux of plaintiff's case.  The fact that witnesses and documents are within neither plaintiff's chosen forum, nor defendant's proposed forum, do not generally weigh in favor of transfer.

Defendant, citing Trace-Wilco, Inc. v. Symantec Corp., 2009 WL 455432, at *3 (S.D. Fla, Feb. 23, 2009), contends that in intellectual property disputes, the focus of the litigation is often on the alleged infringer, its employees, and its documents.  However, as plaintiff points out, it is plaintiff's products, their design, and whether they comply with the UN standards that are the focus of this litigation. Defendant has, in fact, admitted that it distributed the memo in question to Alpine Mud and, although the extent of that distribution is at issue, whether the memo is false and misleading and whether its distribution has harmed or will harm plaintiff are the primary elements yet to be proven.  As such, it would appear that the focus of this litigation will be on documents and witnesses located at plaintiff's principal place of business.

The court notes that the parties have made no significant arguments regarding their relative financial abilities to bear the cost of travel to this district or in bearing the cost of changing the venue to Houston, Texas.

The court finds that defendant has failed to adequately show that venue would be materially more convenient in Houston, Texas.    Transferring this case to Houston, Texas, would merely shift the inconvenience from defendant to plaintiff.  See e.g. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996) (affirming district court's denial of motion to transfer where district court found that transferring the case would merely shift inconvenience from the defendants to the plaintiff); Burger King Corp. v. Thomas, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991) ("transfer of venue in this case is improper since it would merely shift inconvenience from defendant to plaintiff, resulting in an equitable standoff." citation omitted); see also Trace-Wilco, 2009 WL 455432 at *3 ("When weighing the convenience of the witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." citations and internal quotations omitted).  Plaintiff's choice of venue is entitled to deference, and defendant has not established that such choice is either improper or outweighed by countervailing considerations, or that there will be any material difference in the convenience of the witnesses, with respect to the two fora.

## **CONCLUSION**

For the reasons stated above, defendant's motion to transfer venue (Doc. 26) is **DENIED**.

**DONE and ORDERED** this 6th day of October, 2009.

  /s/   Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE